DEROBERT v. STRANAHAN.

(Circuit Court, S. D. New York. December 29, 1903.)

1. CUSTOMS DUTIES—COLLECTION—DELIVERY OF GOODS—BILL OF LADING—NON-PRODUCTION—RIGHTS OF HOLDER—LIABILITY OF COLLECTOR.

Act Cong. March 2, 1799, c. 22, § 62, 1 Stat. 675, provides that all goods imported into the United States for the purposes of the tariff act shall be deemed and held to be the property of the person to whom said goods may be consigned, any sale prior to entry and payment or securing the payment of the duties on the goods and the payment of all bonds unsatisfied by the consignee to the contrary notwithstanding; and Customs Administrative Act June 10, 1890, c. 407, § 1, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886], declares that merchandise imported into the United States shall for the purpose of the act be deemed to be the property of the consignee, but that the holder of any bill of lading consigned to order and indorsed by the consignor shall be deemed the consignee thereof. *Held*, that where a consignee of goods, as appeared from the ship's sworn manifest and from a certified invoice, paid the duty and received the goods from the collector, the latter was not liable to a transferee of the bill of lading, holding the same as collateral for a draft drawn on the consignees for the price of the goods, which they refused to pay on presentation.

At Law.

In November, 1902, Salin Ghazel & Co., of New York, ordered from H. Poulin-Latouche, of France, 150 gross of horn combs to be paid for in cash on delivery, the shipper to draw at sight. The bill of lading was to accompany the bill of exchange and to be delivered to Ghazel & Co. on payment.

The goods were shipped to New York on "La Touraine," of the French line, the bill of lading being taken in the name of Ghazel & Co. Poulin-Latouche drew a sight bill of exchange on Ghazel & Co., payable to the order of the plaintiff, a French broker, who discounted it and received as security for the discount the bill of lading and two duplicates thereof. The goods arrived in New York in December, 1902, and were taken possession of by the defendant as collector of the port and were by him delivered to Ghazel & Co., who were named in the sworn manifest of the ship as the consignees. Ghazel & Co. did not have the bill of lading, but they presented a pro forma invoice showing the value of the goods and, as consignees, they paid the duty assessed thereon after having made oath that they were the owners. Payment of the bill of exchange having been refused the plaintiff, three weeks after the delivery to the consignees as aforesaid, presented a bill of lading from Poulin-Latouche to Ghazel & Co. for the goods, tendered the duty and charges due thereon and demanded the goods of the defendant which demand was refused. It is alleged in the complaint "that the said H. Poulin-Latouche thereupon duly indorsed and delivered the said bill of lading and the duplicates thereof, to the plaintiff, as security," etc. The answer alleges that the bill of lading was never indorsed by them (Ghazel & Co.) to this plaintiff or any other person, and the defendant's brief asserts that the plaintiff presented a bill of lading "without indorsement, and demanded the goods." The court has no means of determining this question of fact as the bill has not been returned. It is probable, however, that the bills of lading were indorsed by Poulin-Latouche, the shipper, and that the defendant's denials and allegations are not intended to challenge this averment of the plaintiff, but are simply directed to the assertion of the proposition, which is not disputed, that there was no indorsement by Ghazel & Co., the consignees, who were named as such in the bill of lading. The oath of the master of "La Touraine," attached to the manifest, states that "the said goods are as particularly described as in the bills of lading, signed for the same by me or with my knowledge." The complaint demands judgment for the value of the goods and interest.

Frederick N. Gilbert, for plaintiff.
T. E. Hamilton, for defendant.

COXE, Circuit Judge (after stating the facts as above). The collector is an executive officer, his duties are ministerial. In the entry of merchandise and collection of duty he follows the instruction of the written law. He has little discretionary power and no judicial power. He is not concerned with questions of the ownership of goods which come into his possession, he is not permitted to determine disputed questions of title. He looks to the statute as his guide and finds there a simple, effective and sensible rule which has, in substance, been the law for more than a century, namely, that the consignee shall, so far as the customs law is concerned, be deemed the owner of the imported merchandise.

Section 62, c. 22, of the act of March 2, 1799, 1 Stat. 675, provides:

"That all goods, wares or merchandise imported into the United States shall, for the purposes of this act, be deemed and held to be the property of the person to whom the said goods, wares or merchandise may be consigned, any sale, transfer or assignment, prior to the entry and payment or securing the payment of the duties on the said goods, wares and merchandise, and the payment of all bonds then due and unsatisfied by the said consignee, to the contrary notwithstanding."

Substantially the same language is used in succeeding acts and finally reappears in the customs administrative act of June 10, 1890, as follows:

"That all merchandise imported into the United States shall for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned; but the holder of any bill of lading consigned to order and indorsed by the consignor shall be deemed the consignee thereof," etc.   Act June 10, 1890, c. 407, § 1, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886].

The plaintiff concedes, apparently, that Ghazel & Co. were the only persons who could make entry of the goods, but argues that "the defendant was not justified in delivering the combs to Ghazel & Co. without the bill of lading."   In other words, it is contended that it was the duty of the collector to hold the goods indefinitely until some one produced a bill of lading and then to deliver them to such holder.   It is thought that this position cannot be maintained. Although the bill of lading is, perhaps, the best evidence of the right to make entry it is not indispensable.

Sections 4 and 5 of the administrative act [U. S. Comp. St. 1901, pp. 1888, 1889], and sections 2785, 2788 and 2789 of the Revised Statutes [U. S. Comp. St. 1901, pp. 1867, 1869], contemplate the entry of merchandise "according to the circumstances of the case" in the manner actually followed in the present instance.

On the 16th of December, when the combs arrived in New York, they were claimed by Ghazel & Co., who made the "declaration of owner in cases where merchandise has been actually purchased," as provided by section 5 of said act.   They also made "application, under oath, to enter goods without invoice" upon the ground that no certified invoice had been received.   In all this they were confirmed by the ship's manifest.   In permitting the consignees to take the goods, after paying duty thereon, I cannot think that the collector was guilty of any breach of duty or illegal act which renders him liable for their value.   Upon the facts presented to him Ghazel & Co. were not only the consignees, but the owners of the goods and no hint of adverse interests was even suggested.

If the bill of lading had been produced by the plaintiff upon the arrival of the goods a different situation would have been presented; but even in that case it is, at least, questionable whether the collector, legally, could have refused entry to Ghazel & Co., they being admittedly the consignees named in the bill of lading.

Upon the entire case it is thought that the plaintiff is not entitled to recover.

The jury, by direction of the court, found a verdict in favor of the defendant.